GREAT LAKES REALTY & BUILDING CO. v. TURNER.

1. LANDLORD AND TENANT—LEASE—ASSIGNMENT.
   Under the restrictive provisions of a lease prohibiting an
   assignment until the lessee constructed a building on the
   premises, a sublease for approximately half the term on
   condition that the sublessee should construct the building
   described in the underlying lease, when it should be
   entitled to an assignment of the lessor's interest, was
   not an assignment within the meaning of the prohibitive
   clause, which did not relate to an executory contract for
   hiring the premises, and there could be no forfeiture
   unless the tenant transferred his entire estate.

2. SAME—FORFEITURE—EQUITY.
   On a bill of complaint by said lessee to restrain the lessor
   from attempting to forfeit the rights set up under the
   sublease to complainant, the trial court did not err in
   overruling a demurrer to the bill founded on the contention
   that the transaction amounted in effect to no more than
   an assignment, since forfeitures are not favored in equity,
   and the provisions creating them are to be strictly con-
   strued.

Appeal from Wayne; Hosmer, J. Submitted Janu-
ary 6, 1916. (Docket No. 53.) Decided March 30,
1916.

Bill by Great Lakes Realty & Building Company
against Annie Caskey Turner and others for an in-
junction restraining defendants from forfeiting cer-
tain rights set up in a sublease to complainant. From
an order overruling the demurrer of defendant Annie
Caskey Turner, she appeals. Affirmed.

*Trowbridge & Lewis,* for complainant.

*Jasper C. Gates* and *William H. Turner,* for defend-
ant.

MOORE, J. The bill of complaint is in part as follows:

"Complaining, your orator, Great Lakes Realty & Building Company, brings this its bill of complaint against Annie Caskey Turner, William H. Turner, and William J. Brown, and respectfully shows unto the court as follows:

"*First.* That your orator is a corporation duly organized and existing under the laws of the State of Michigan, and having its principal office and place of business at the city of Detroit, Mich., and that the said Annie Caskey Turner, William H. Turner, and William J. Brown, who are made defendants to this bill of complaint, are all residents of the city of Detroit, Mich.

"*Second.* That the said Annie Caskey Turner is the owner in fee of the following described premises, situated and being in the city of Detroit, county of Wayne, and State of Michigan, to wit:  *  *  *

"*Third.* That, on the 21st day of November, A. D. 1910, at the city of Detroit, Mich., the said defendant Annie Caskey Turner made and entered into a 99-year lease with the defendant William J. Brown whereby she leased the above-described premises to defendant Brown for a period of 99 years from and after the 1st day of November, A. D. 1910, upon terms and conditions therein provided and stipulated. * * * And the terms of said lease as appearing by said record are hereby made a part of this bill of complaint, but for more ready reference your orator shows that paragraphs sixth, twelfth, and thirteenth of said lease are in words and figures as follows:.

" '*Sixth.* And the said lessee covenants and agrees to and with the said lessor, in consideration of the granting of this lease, and as security for the payment of the rents herein reserved, and the performance of the covenants and agreements herein contained on his part to be kept and performed, that he will, not later than January 1, A. D. 1920, complete the erection of a building upon said demised premises, to cost not less than seventy-five thousand dollars, which building shall be at least seven stories in height, and shall cover substantially the entire premises. _*_*_*

" '*Twelfth.* And the said lessee further covenants that he will not assign this lease, except by way of mortgage, or trust deed in the nature of a mortgage, until he shall have completed and paid for the building to be erected on the said demised premises of the character and within the time hereinbefore specified. And it is further covenanted and agreed by and between the parties hereto that the said lessee may at any time after the building to be erected on said premises has been constructed, or at any time when there is a building erected upon said demised premises which shall conform to all the requirements of this lease, and which shall be free and clear from all mechanics' liens whatsoever, and the possibility thereof, sell or assign his interest in said leased premises and in the buildings thereon, provided. * * *

" '*Thirteenth.* It is understood and agreed that nothing herein contained shall be construed to prevent said lessee from assigning his interest herein by way of mortgage or trust deed in the nature of a mortgage at any time. Nor shall the said lessee be prohibited from re-leasing or subletting the whole or any portion of said premises. The lessee may at any time during the term of this lease convey his interest in and under this lease and in any and all buildings or portions or parts of building or buildings that may at any time be erected on the property hereby demised, by mortgage or trust deed in the nature of a mortgage, and the lessee may assign any policies of insurance on said premises held by him (and not hereinbefore required ·to be delivered to the lessor) as collateral security, for the obligation secured by such mortgage or trust deed.'

"*Fourth.* That the said defendant Brown went into possession of said premises under said lease immediately after its execution and delivery, and has remained in lawful possession thereof by himself and sublessees holding said premises under him up to and including the date of your orator exhibiting this bill of complaint.

"*Fifth.* And your orator further shows that on the 23d day of April, A. D. 1915, the defendant Brown, acting under the express permission of paragraph 13 of said underlying lease of November 21, 1910, made and entered into a sublease of said premises for the term of 50 years with your orator in words and figures as follows, to wit:

" "* * * The lessor, in consideration of one dollar and other valuable considerations to him heretofore paid and the further sum of twenty-three thousand five hundred dollars to be paid to him hereafter by extraneous arrangement not made a part of this lease, and in consideration of the covenants and agreements herein expressed on the part of the lessee to be kept, performed, and fulfilled, has demised and leased, and by these presents does demise and lease, unto the said lessee, all the following described premises, situated and being in the city of Detroit, county of Wayne, and State of Michigan, to wit: * * * Subject, however, to the terms and conditions imposed upon the lessor herein by and under a certain ninety-nine year lease of said premises, wherein Annie Caskey Turner is lessor, and the lessor herein is lessee, dated November 21, 1910, and recorded October 21, 1911, in Liber 827 of Deeds, at page 53, Wayne County Records (hereinafter designated the underlying lease), it being understood and agreed that this lease is a sublease thereunder and is made under the express permission of paragraph "thirteenth" of said underlying lease. * * * To have and to hold the said described premises, with the rights, privileges, easements, and appurtenances thereunto attached and belonging, unto the lessee for and during the term of fifty years. * * * In consideration whereof the lessee hereby covenants and agrees that it shall and will make for the lessor all payments and perform for the lessor all covenants and conditions that the lessor is required to make and perform by and under said underlying lease during the term of this lease. * * * If the lessee shall allow or permit any default to occur upon said underlying lease, the same shall constitute a default of this lease also, with like effect and with like remedies to the lessor, in all respects the same as if the terms of said underlying lease were here repeated, provided that for the purpose of this lease the provisions of paragraph "ninth" of said underlying lease shall be considered amended to read "sixty days" in each case where the word "three months" occur therein. The lessor also agrees upon demand of the lessee to mortgage his entire right, title, and interest in and to said underlying lease and in and to said described premises by proper form of mortgage or mortgages to be executed jointly with a mortgage by the lessee of its entire property and assets, to secure the bonds or obligations of the lessee, not to exceed seven hundred fifty thousand dollars in amount, to be issued and negotiated under security of such joint mortgage or mortgages for the purpose of erecting a build-

ing upon said property in accordance with the terms and conditions of said underlying lease relative to such building and for no other purpose.  * * *'

"And your orator immediately went into possession of said premises as sublessee of the defendant Brown, and has been in lawful possession thereof from the date of execution of said sublease.   * * *

"*Sixth.* Your orator further shows that after the execution and delivery of said 50-year sublease, and upon said 23d day of April, A. D. 1915, your orator made and entered into a certain agreement with the defendant Brown in words and figures as follows, to wit:

" '* * * Whereas, second party is desirous of obtaining the remaining rights of first party in said ninety-nine year lease and in said premises, but certain conditions in said ninety-nine year lease made precedent to the right of first party to assign the same make a present assignment thereof impossible:   Now, therefore, this indenture witnesseth that first party, in consideration of one dollar, lawful money of the United States, and other valuable considerations to him in hand paid by second party, receipt of which is hereby acknowledged, does agree to and with second party, that if second party shall complete or cause to be completed upon said premises not later than January 1, 1920, such building as is called for by paragraph "sixth" of said ninety-nine year lease,  * * *  first party shall and will in consideration thereof, upon demand of second party, make due and proper assignment of said ninety-nine year lease and of all first party's rights in said premises to second party in manner and form as permitted in paragraph "twelfth" of said ninety-nine year lease.  * * *'

"And your orator avers that the said agreement is in letter and spirit in proper accord with the provisions above quoted in paragraph 'sixth,' 'twelfth,' and 'thirteenth' of said underlying lease, and that your orator is entitled to the full benefit and enjoyment of all rights secured to your orator thereunder, free from all threats and molestation of the said defendants, or any of them, or of any person whatsoever.

"*Seventh.* And your orator further shows that your orator is incorporated for the sole purpose of erecting and controlling a building upon the said described

premises, under the terms and conditions provided in said several leases and agreements, and that your orator has expended large sums of money in arranging and perfecting its organization for such purpose. And your orator further shows that in order to carry out its said enterprise it has projected a large bond issue and had about completed arrangements for the financing of its building through the sale of such bonds by reputable and responsible agents, when such plans were interrupted and its financial prospects endangered by the wrongful acts of Annie Caskey Turner and William H. Turner. [The bill here sets out in detail those acts.]   *   *   *   If your orator is prevented by the wrongful acts of the said defendants from completing its financial plans and marketing its bonds, your orator's entire enterprise will be crippled' and your orator ruined, involving the loss and destruction of property rights of your orator worth many thousands of dollars.

"*Eighth.* And your orator further shows that the defendant William H. Turner is the husband and business advisor of the defendant Annie Caskey Turner, and upon information and belief your orator avers that said William H. Turner, becoming covetous of the great value existing in the lessee's interest in the said underlying lease on account of the advance in property values in the city of Detroit since the date of its execution has prompted and incited the defendant Annie Caskey Turner to adopt, and under his prompting said Annie Caskey Turner has adopted and is still pursuing, a course of unjust, oppressive and unfair conduct toward your orator and toward the defendant Brown in an endeavor to cast a cloud upon the possessory right and title of said Brown and your orator under said leases, and impair the credit of your orator, in order to destroy the market for your orator's bonds and ruin your orator's enterprise, and force defendant Brown to abandon the premises or accept a new lease on more favorable terms to the defendant Annie Caskey Turner.   *   *   *

"And your orator further shows that in pursuance of such plan, the defendant Annie Caskey Turner has also communicated to your orator the statement that she considers your orator an outlaw upon her premises,

has incorporated in receipts for rentals which your orator has paid direct to said Annie Caskey Turner as provided in said sublease stipulations and reservations against prejudice to her rights in litigating with your orator as to your orator's possessory rights, at the same time conveying to your orator, by the statements of said defendant William H. Turner, the threat that she would smash your orator's enterprise and drive your orator from said premises, all of which, though without any right and foundation, places your orator in a position where your orator cannot honestly make financial plans and contracts without disclosing to persons with whom your orator makes such contracts the fact that delay and trouble over the same is threatened by reason of said acts of said defendants, and upon such disclosure your orator is confronted with the natural unwillingness of business men to deal with your orator at all until the atmosphere can be cleared of such possibility of trouble and delay.

"And your orator further shows that your orator's architects threatened to withdraw from the enterprise and have been retained at work for your orator only upon receiving personal assurance from certain stockholders of your orator protecting them against loss in case your orator is ruined by the acts of the defendants, and, further, that all of the plans of your orator are brought to a standstill by reason of the fact that your orator's fiscal agents have refused to proceed with the sale of your orator's bonds until the situation created by the acts of said defendants can be cleared up, which means that your orator's entire enterprise is crippled because the entire strength and prospects of the same are entirely dependent upon the marketing of said bonds, without which your orator will operate continually at great loss and inevitably go out of business within a short time. * * *

"*Tenth.* And your orator further avers that said several statements were not made, nor the said several acts done in good faith by the said defendants in the belief that there had been any breach of paragraphs 'sixth' and 'twelfth' of the underlying lease, and your orator avers that the said defendants well know that your orator's 50-year lease and the agreement for future assignment of the underlying lease are perfectly

legal and permissible under the express terms of paragraphs 'sixth,' 'twelfth,' and 'thirteenth' of said underlying lease above quoted, and well know that your orator is in lawful possession of said premises, entitled to the quiet and peaceful enjoyment of the same and entitled to go on and finance its plans and build the said proposed building free and clear from any threats and molestations on the part of said defendants; and your orator avers that the said statements and acts were made and committed, and said notice was prepared and served by the said defendants in the hope and belief that the threats of litigation and trouble thereby made, coming at the formatory period of your orator's enterprise, would have the effect, in connection with the other wrongful acts of the defendants to which reference is herein made, of destroying your orator's enterprise in manner aforesaid, and thus enable the defendant Annie Caskey Turner to confiscate your orator's property." That Brown is colluding with the Turners, "and your orator fears that, unless restrained by injunction of this honorable court, they will carry their said several threats into execution and your orator will be thereby irreparably injured and ruined. * * *

"Your orator prays * * * that your orator's said lease, recorded in Liber 936 of Deeds, page 454, and your orator's said agreement, recorded in Liber 1006 of Deeds, page 124, be decreed by this court to be legal and permissible under the terms of the said underlying lease, and your orator be decreed to be lawfully in possession of the said premises thereunder.

"That the said defendants William H. Turner and Annie Caskey Turner be forever restrained by the order and injunction of this court from further threatening to institute and from instituting the proceedings threatened in said notice of May 24, 1915, from confederating or colluding with defendant Brown to deprive your orator of the possession of said premises. * * *

"And that your orator may have such further and other relief as to the court shall seem meet and as shall be agreeable to equity."

The defendant William H. Turner filed a disclaimer.

The defendant William J. Brown filed an answer substantially admitting the material averments of the bill. Annie Caskey Turner filed a demurrer assigning seven reasons therefor. The demurrer was overruled, and the case is brought here for review.

The important question is: Did what was done constitute an assignment of the lease which would justify its forfeiture?

Counsel for appellant make the following propositions:

(1) "The sublease and agreement were executed the same day between the same parties; they refer to precisely the same subject-matter. It follows that they must be construed together as one transaction, and that it is of no consequence that they are contained in two documents separately executed."

(2) "The 'sublease' and 'agreement' thus construed together operate as an assignment of all the rights vested in Brown by the underlying lease."

(3) "Brown had parted with all of his interest in the property in question and retained no rights which could authorize him to declare a forfeiture of complainant's interests."

These propositions are argued at great length, counsel citing many authorities including *Sexton* v. *Storage Co.*, 129 Ill. 318 (21 N. E. 920, 16 Am. St. Rep. 274), which latter case counsel say is controlling. A reference to that case will show it easily distinguishable from the instant case, as will appear from the following language taken from the opinion:

"The leases to Frank F. Cole are 'for and during' the terms named, 'and until the 1st day of May, 1888.' The lease executed by Frank F. Cole to the Chicago Storage Company is of precisely the same premises included by the leases to him, and it is in the identical language of those leases, 'for and during' the term named, 'and until the 1st day of May, 1888,' so that the terms all end at the same instant of time. No space of time, however minute, therefore, can, by any

possibility, remain after the term of the storage company has ended, before the expiration of the terms of Cole, in which he could enter upon or accept a surrender of the premises."

It may be conceded that the two papers should be considered together in the effort to understand their meanings. In fact, the terms of all the papers should be considered. It will hardly be claimed that the sublease for 50 years operates as an assignment of the 99-year lease. See *Lee* v. *Payne*, 4 Mich. 106. The language of the other paper is simple. It clearly recognizes the fact that the lease is not assignable until a building worth at least $75,000 is erected. The complainant undertakes to bring about the erection of such a building, and the papers provide that, when it is erected and all the terms in relation thereto contained in the underlying lease are met, then, and not until then, is the complainant entitled to an assignment of the lease. The underlying lease in terms provides that, when such a building is erected and its conditions are met, Mr. Brown shall be entitled to assign the lease.

"An assignment of a term for years occurs where the lessee transfers his entire interest therein without retaining any reversionary interest. If an instrument so transfers the lessee's interest, it constitutes an assignment regardless of its character and form. Thus, if the lessee makes an assignment of his property, including the term, for the benefit of his creditors, it constitutes a breach of the restriction against the assignment. There must, however, be an actual transfer of the lessee's interest, else there is no assignment of the term. Accordingly an executory contract to assign the term is not in law an assignment thereof. This is so although the prospective assignee is let into possession." 24 Cyc. pp. 972, 973, and note 59.

See, also, *Crouse* v. *Michell*, 130 Mich. 347 (90 N. W. 32, 97 Am. St. Rep. 479).

Forfeitures are not favored in the law, and provisions creating them are to be strictly construed. *Mil-*

*ler* v. *Havens*, 51 Mich. 482, 485 (16 N. W. 865) ; *Small* v. *Robarge*, 132 Mich. 356 (93 N. W. 874).

No assignment of the lease was made. At most, what was done was an agreement to assign when the conditions were such that Mr. Brown had a right to assign.

The decree of the court below is affirmed, with costs, and defendant will be given the usual time in which to answer.

STONE, C. J., and KUHN, OSTRANDER, BIRD, STEERE, BROOKE, and PERSON, JJ., concurred.