VALORE L. MARCINAK, Appellee
v.
THE WEST INDIES INVESTMENT COMPANY, et al., Appellants

No. 13,672

United States Court of Appeals
Third Circuit

Argued January 31, 1962
Decided March 6, 1962

*See, also, 299 F.2d 821*

\*Sitting by assignment.

355

James H. Isherwood, Esq., Christiansted, St. Croix, Virgin Islands, *for appellants*

George H. T. Dudley, Esq., Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before ALDRICH*, GANEY and SMITH, *Circuit Judges*

ALDRICH, *Circuit Judge*

This is an action to recover a deposit made in connection with a lease agreement. The defendants allege

*Sitting by assignment.

breach of contract and claim the deposit as liquidated damages. The case was tried to the court, which ruled for the plaintiff on the ground that the agreement was invalid because it lacked the consent of the owner of the underlying fee. Defendants appeal.

On January 6, 1955, St. Croix Real Estate Development Corporation, hereinafter St. Croix, leased from the Municipality of St. Croix, hereinafter the government, a parcel of some sixty acres known as Peter's Farm Hospital for the expressed purpose of developing and renting apartments and homes. The lease was to continue to January 6, 1985. The lessee was given an "option" to purchase the property at any time prior to termination. Inasmuch as the terms were to be agreed upon, it might be more accurate to describe this provision as a "refusal." It was further provided, "The lessee shall, with the approval of the Government, have the right to assign any or all of its rights, title and interest in the said lease."

In November 1958 defendant West Indies Investment Company, hereinafter West Indies or defendant,[1] agreed to lease the buildings, with one exception, at Peter's Farm Hospital, and ten acres of land—the specific acres and boundaries to be "selected" by West Indies—to one Compain, plaintiff's assignor. The lease was to continue to January 1,[2] 1985, with a monthly rental of $200. The term was to commence in January 1959 when Compain had completed a cash payment of $21,000 in addition to $5,000 in cash initially deposited. The agreement expressly recited that it conferred no rights in the government lease to St. Croix. By supplemental agreements the right to make payment of the $21,000 was extended to December 10, 1959.

[1] The other defendant, one Lee, is of no special significance on this appeal except to note that he is the principal officer and sole party acting for the corporate defendant, and is a resident of Texas.
[2] Erroneously recited by the court as January 6, 1985. This was a matter of some importance in determining whether the November agreement was for a sublease or an assignment.

St. Croix was a wholly-owned subsidiary of West Indies. By separate memorandum Compain and West Indies agreed that West Indies owned St. Croix's "assets;" that their "names . . . can be used interchangeably;" and that the "use of either . . . will not affect the rights of either party."

West Indies apparently had no lawyer, and Compain's lawyer, hereinafter called the attorney, drew various documents and was apparently expected to draw the rest. The attorney had in his possession a copy of the master lease. In November 1959 defendant wrote the attorney and asked how that lease could be transferred from St. Croix to West Indies "if we wish to do so." To what extent this inquiry related to Compain or was more general is not clear. On December 11 the attorney informed defendant that he still did not have the $21,000. The following week he wrote that he had received it, but that before making delivery he was preparing an assignment of the leasehold from St. Croix to West Indies and "a more formal Sublease." On January 2, 1960, the attorney forwarded to West Indies drafts of two documents for execution. In view of plaintiff's later contentions it is interesting to observe that neither document made any mention of, or provision for, government assent. Similarly, the proposed "more formal" lease agreement made no reference to the boundaries except to say that a survey was to be made and paid for by West Indies. However, instead of being a sublease this second document substantially departed from the November 1958 agreement by being couched throughout in terms of assignment. In addition, it contained a paragraph conveying St. Croix's "option" to purchase from the government. It made no provision for the agreed $200 monthly rental. There were other significant changes. West Indies, not unnaturally, refused to execute this agreement. It did not, on the other hand, complain of plaintiff's failure to tender payment promptly, but wrote the attorney that if plaintiff wanted

more clarification than the original agreement, the attorney should prepare a sublease comporting with the original agreement rather than an assignment introducing entirely different terms. This letter, which went into considerable detail, was sent January 12, 1960. The attorney's only response was to make desultory requests for a conference. This was not in acknowledgment of the correctness of defendant's position. As late as April 19, 1960, the attorney was still demanding "the assignment of the Peter's Farm lease to my clients." If anything is abundantly clear it is that Compain, and plaintiff as her assignee, were not entitled to an assignment. Suit was instituted on June 20.

The district court ruled that West Indies must return the deposit because it "could not execute a valid lease . . . without the approval of the Government [and] hence no lease or assignment of lease became effective," citing Grammer v. Virgin Islands Corp., 3 Cir., 1956, 3 V.I. 588, 235 F.2d 27. Grammer held that a lease agreement which expressly provided that it was void until consented to by the government was in fact void without such assent. The November agreement contained no such condition. If it was invalid it was only because the master lease separately required the government's assent. However, requirement of assent for an assignment does not mean that consent is needed for mere sublease.[3] Crusoe v. Bugby Eng. Com. Bench, 1771, 3 Wilson, 234; 1 Tiffany Real Property § 118 (3rd ed. 1939) ; see discussion in De Baca v. Fidel, 1956, 61 N.M. 181, 297 P.2d 322. As a matter of fact, as has already abundantly appeared, this contention was an after-

[3]We cannot help observing that the court was wrong even if the law did not make this clear distinction. The November agreement, properly construed, was not a sublease, but an agreement to make one—viz., to select boundaries and grant leasehold possession—upon the payment of $21,000; in other words, an option to grant a sublease. Even if government consent were needed for the sublease itself, that would not mean its assent was required for the option. Howland v. Plymouth, 1946, 319 Mass. 321; Great Lakes Realty & Bldg. Co. v. Turner, 1916, 190 Mich. 582, 157 N.W. 57; 1 Tiffany Real Property § 118 (3rd ed. 1939).

thought when negotiations had broken down. It is without merit.

■ In this court plaintiff suggests that West Indies was in default for another reason, in that it had not specified the exact boundaries,[4] or tendered a formal document of sublease. It is manifest that the shoe was on the other foot. Although eventually these matters would have had to be attended to, they were precisely not what was demanded by the plaintiff at the time the proceedings broke down. On the contrary, the true situation was that until after December 10, 1959, plaintiff indicated an inability, and thereafter a total unwillingness, to undertake the obligations imposed by the November 1958 agreement. Under these circumstances West Indies did not have to tender technical performance. Restatement, Contracts, § 306; Cobuzzi v. Parks, 1943, 315 Mass. 199, 51 N.E.2d 965. "The law does not require a futile tender." NLRB v. Murphy's Motor Freight, Inc., 3 Cir., 1956, 231 F.2d 654, 655. This is not a case where a tender could not have been made had it been called for. The sole default was plaintiff's, and the deposit was forfeited.

■ Before disposing of this case we must make some apparently necessary observations on the subject of our record-appendix system. Although all of the record filed with the clerk is "available" to the court on appeal, unless there is some special circumstance nothing will be noticed that does not appear in the appendix of the appellant or the appellee. 3d Cir. Rule 24, U.S.C.A.; Hornin v. Montgomery Ward & Co., 3d Cir., 1941, 120 F.2d 500 (primary obligation is upon the appellant). There are a number of sufficient reasons for this, an obvious one being that all three mem-

[4]In case it be suggested that the contract was void for indefiniteness for this reason, we note that conveyances and contracts to convey have been upheld despite provisions for prospective selection by either the grantor or the grantee. E. M. Loews, Inc. v. Deutschmann, 1958, 337 Mass. 42; Calder v. Third Judicial District Court, 1954, 2 Utah 2d 309, 273 P.2d 168; Indianapolis Natural Gas Co. v. Spaugh, 1897, 17 Ind. App. 683, 46 N.E. 691; 1 Tiffany Real Property § 997 (3rd ed. 1939).

bers of any panel may have their chambers in different cities, and are handicapped if there is but one copy of a pleading, transcript, or exhibit. See Esso Standard Oil Co. v. Secatore's, Inc., 1 Cir., 1957, 246 F.2d 17, 22–23, cert. den. 355 U.S. 834, 78 S. Ct. 54, 2 L. Ed.2d 46. Unless consent has been obtained from the court in advance for good cause shown, parties may not count upon the court taking notice of any matter not reproduced. We departed from our practice in this case by stipulation in an open court because both parties appeared to be under a misunderstanding, but we are unlikely to do so again.

Judgment will be entered vacating the judgment of the District Court and dismissing the complaint.