**UNITED STATES of America,
Appellee,**

v.

**George BARROW, Benny Bonanno, Fred
DiPatrizio, Joseph Mattia and Pas-
quale Pillo, Appellants.**

**Nos. 15093–15097.**

United States Court of Appeals
Third Circuit.

Argued Sept. 14, 1965.

Decided July 18, 1966.

Rehearing Denied Aug. 30, 1966.

See also D.C., 212 F.Supp. 837.

Stanford Shmukler, Philadelphia, Pa. (Morton Witkin, Witkin & Egan, Philadelphia, Pa., on the brief), for appellants.

Philip J. Hoskins, and Gerald Goldfarb, Sp. Attys., Dept. of Justice, Washington, D. C. (Fred M. Vinson, Jr., Asst. Atty. Gen., Thomas F. McBride, Atty., Dept. of Justice, Washington, D.C., on the brief), for appellee.

Before BIGGS, Chief Judge, and KALODNER and SMITH, Circuit Judges.

WILLIAM F. SMITH, Circuit Judge.

The appellants were tried by a jury and convicted on the first count of a multiple count indictment charging them with conspiracy to violate § 1952 of Title 18 U.S.C.A. Pillo and DiPatrizio were also convicted on each of three counts charging substantive offenses. The present appeals are from the judgments entered on the jury verdicts.

The pertinent provisions of the statute with which we are here concerned read as follows:

"(a) Whoever travels in interstate * * * commerce or uses any facility in interstate * * * commerce, * * *, with intent to—

* * * * * *

(3) * * * promote, manage, establish, carry on, or facilitate the

promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs * * * (3), shall be fined * * * or imprisoned * *, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, * * *, in violation of the laws of the State in which * * * committed * * *."

## FACTS

Between the middle of November 1961, and the middle of January 1962, the appellants were engaged in various capacities in the operation of a gambling casino at 237 Cherry Street, Reading, Pennsylvania, in violation of State laws, 18 P.S. §§ 4603, 4605 and 4606. The casino, furnished and equipped as a dice room, occupied the entire ground floor of a commercial building.

## SUFFICIENCY OF EVIDENCE

The appellants maintain that the evidence was insufficient to support their convictions on the charge of conspiracy. Pillo and DiPatrizio also urge that the evidence was insufficient to support their convictions on the substantive charges. It is conceded that there was ample proof that they had been engaged in gambling operations in violation of State law. However, the appellants argue that the evidence was insufficient to support the conclusion that they had violated the federal statute.

We think it advisable to state at the outset the general principles by which we must be guided in passing on the sufficiency of the evidence relating to the charge of conspiracy.

■ The crime of conspiracy, as defined in § 371 of Title 18 U.S.C.A., is seldom susceptible of proof by direct evidence. Proof of the crime may rest as it frequently does, on indirect or circumstantial evidence. The existence of a conspiracy may be inferred from evidence of related facts and circumstances from which it appears, as a reasonable and logical inference, that the activities of the participants in the criminal venture could not have been carried on except as the result of a preconceived scheme or common understanding. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Amedeo, 277 F.2d 375 (3rd Cir. 1960); United States v. Monticello, 264 F.2d 47 (3rd Cir. 1959); United States v. Migliorino, 238 F.2d 7 (3rd Cir. 1956).

■ There was substantial evidence from which the jury could have found that Pillo, DiPatrizio and Mattia travelled regularly from their homes in New Jersey to the casino in Reading, where they were employed as "ladder men." Each of them was stationed at a dice table as an overseer and, as such, "facilitated" the games as they progressed. As overseers their principal function was to police the games on behalf of the "house." The evidence was more than sufficient to support the jury's determination that Pillo and DiPatrizio were guilty of the substantive offenses and that they and Mattia were involved in the conspiracy.

While there was no direct evidence that Barrow knew of the interstate aspects of the gambling enterprise, there was ample circumstantial evidence from which the jury could have inferred that he did. There was evidence from which the jury could have found that Barrow managed and promoted the gambling operations. He generally supervised the employees, including those who came from New Jersey; he was the final arbiter of disputes relating to the roll or call of the dice; he made the final decision when any question arose as to whether a prospective patron should be admitted to the casino; he provided "house money" when the dice game began and removed excess cash from the table as play continued; and, he was in almost daily association with the employees. At times Barrow was assisted by Mattia in the performance of his many duties. A more complete summary of the evidence relating to Barrow is contained in the opinion of the court below. 229 F.Supp. 722, 726.

We believe that the evidence as a whole, viewed in the light most favorable to the prosecution, was susceptible of a reasonable and logical inference that Barrow, as manager and promoter, was fully aware of the scope of the illegal enterprise, including its interstate aspects. See United States v. Palladino, 203 F.Supp. 35, 41 (D.C.Mass.1962). The inference was not only justified, it was almost inescapable. It is inconceivable that Barrow would have placed employees like Pillo, DiPatrizio and Mattia in positions of trust without knowing who they were and where they came from.

The evidence relating to Bonanno's participation in the conspiracy is summarized in the opinion of the court below. 229 F.Supp. 722, 727. We think that this evidence was insufficient to warrant the submission of the issue of his guilt to the jury.

The appellants, relying on United States v. Honeycutt, 311 F.2d 660 (4th Cir. 1962), argue that the Government was required to prove that the interstate travel was an integral part of and essential to the gambling operations. The cited case does not support this argument. The enactment prohibits in the broadest terms interstate travel with the requisite intent followed by the performance or attempts to perform any of the acts specified in subparagraphs (a) (3), supra. There is nothing therein which limits its application to interstate travel *essential* to the unlawful activity. See Bass v. United States, 324 F.2d 168 (8th Cir. 1963).

CONSTITUTIONALITY OF STATUTE

The appellants contend that the statute, as applied to the facts in this case, is unconstitutional. This contention is predicated on the premise that the gambling enterprise here in question was a local activity beyond the reach of Congressional authority. It is argued that the federal enactment constituted an encroachment upon the powers reserved to the States under the Tenth Amendment. The question raised by this argument was fully discussed by the trial judge, 212 F.Supp. 837, and we agree with his well reasoned opinion. Moreover, there are other cases in which arguments similar to the one advanced here were rejected as without merit. United States v. Zizzo, 338 F.2d 577 (7th Cir. 1964), cert. den. 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435; United States v. Ryan, 213 F.Supp. 763 (D.Colo. 1963); United States v. Smith, 209 F. Supp. 907, 915–916 (E.D.Ill.1962). We add but one comment: The Tenth Amendment does not operate as a limitation upon the powers delegated to the Congress by the Commerce Clause, Art. 1, § 8, cl. 3. Fernandez v. Wiener, 326 U.S. 340, 362, 66 S.Ct. 178, 90 L.Ed. 116 (1945); United States v. Darby, 312 U.S. 100, 124, 657, 61 S.Ct. 451, 85 L.Ed. 609 (1941).

The appellants further argue that the statute is vague and therefore unconstitutional. We find this argument likewise without merit. Bass v. United States, supra, 324 F.2d p. 172; Turf Center, Inc. v. United States, 325 F.2d 793, 795 (9th Cir. 1964).

ADMISSIBILITY OF TESTIMONY

At the trial the Government called as a witness one M. Earl Smith, a patron of the casino, who was permitted to testify over the timely but somewhat ambiguous objection of defense counsel. The appellants urge that since the identity of the witness was learned as a result of an illegal search,[1] his testimony was inadmissible under the exclusionary rule of Wong Sun v. United States, 371 U.S. 471, 487–488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

There was ample evidence that the identity of Smith had been ascertained from independent sources prior to the

---

1. After several weeks of surveillance the federal agents, armed with arrest warrants, forced their way into the casino. The witness Smith was found on the premises. The court below found that the execution of the warrants and the search which followed were illegal. We find it unnecessary to consider the alleged illegality of the search.

illegal search. Smith was admittedly a frequent visitor to the casino and had been observed by federal agents on at least four occasions as he either entered or left the premises in the company of one Bechtel; in fact, on these occasions he and Bechtel were photographed. The agents learned from personal observation and a check of public records that Smith was the owner of a black Lincoln which was registered to him at his home address in Reading. On the occasions when Smith visited the casino this vehicle was seen in either of two parking lots located near the premises. At 11:05 P.M., on January 19, 1962, approximately two hours prior to the illegal search, Smith was again observed entering the casino in the company of Bechtel. By this time the identity of Smith was well known to the agents.

 Assuming, but not deciding, that the "fruit of the poisonous tree" doctrine may be invoked to bar the testimony of a witness whose identity is learned as a result of an illegal search, it is inapplicable to the facts of the instant case. The doctrine "excludes evidence obtained from or as a consequence of lawless official acts, not evidence obtained from an 'independent source.'" Costello v. United States, 365 U.S. 265, 280, 81 S.Ct. 534, 542, 5 L.Ed.2d 551 (1961), citing Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920). The information as to Smith's identity was gained from personal observation and did not become unusable merely because the same information was subsequently discovered during the illegal search. Burke v. United States, 328 F.2d 399, 420 (1st Cir. 1964), cert. den. 379 U.S. 849, 85 S.Ct. 91, 13 L.Ed.2d 52; Coplon v. United States, 89 U.S.App.D.C. 103, 191 F.2d 749 (1951), cert. den. 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690. Absent any exploitation of the illegality, the testimony of Smith was clearly admissible.

 Also called as witnesses were Leonard Labattaglia and Walter Thomas, casino patrons who were detained upon leaving the premises *prior* to the illegal entry by the agents. When their identity was ascertained they were permitted to leave. The appellants assert that since the identity of the witnesses was discovered as the result of an illegal detention their testimony was inadmissible. Even if the detention was illegal, the appellants lacked standing to challenge it. Cf. Jones v. United States, 362 U.S. 257, 261–262, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

 The appellants contest the propriety of the court's action in admitting the testimony of a federal agent concerning a post-conspiracy interview with one Rocco Grassi, who was named in several counts of the indictment but acquitted. At the conclusion of this testimony the court carefully admonished the jury that the statements made by Grassi during the interview could be considered only in his case and not in that of any other defendant. There was clearly no error in the admission of the agent's testimony. United States v. Miller, 340 F. 2d 421, 423 (4th Cir. 1965); United States v. Viale, 312 F.2d 595, 602 (2nd Cir. 1963), cert. den. 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199; Castro v. United States, 296 F.2d 540, 542 (5th Cir. 1961). We should add that the statements made by Grassi during the course of his interview were not prejudicial to any of the appellants; they implicated only Frank Loscalzo, a defendant who was acquitted.

## USE OF GRAND JURY TESTIMONY

The prosecution called as a witness one Charles Wacks, an habitué of the casino, who suffered from what may be described as convenient lapses of memory. When it became apparent that the testimony of this witness was vague and evasive the trial judge permitted the use of portions of his grand jury testimony for the purpose of refreshing his recollection. A similar use of grand jury testimony was made in the examination of Joseph DiGaetano. The appellants contend that the action of the court was error.

It has been firmly established since United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 233, 60 S.Ct. 811, 849, 84 L.Ed. 1129 (1940) that the "use of grand jury testimony for the purpose of refreshing the recollection of a witness rests in the sound discretion of the trial judge." United States v. Weinberg, 226 F.2d 161, 168 (3rd Cir. 1955), cert. den. 350 U.S. 933, 76 S.Ct. 305, 100 L.Ed. 815; Allis-Chalmers Mfg. Co. v. City of Fort Pierce, Florida, 323 F.2d 233, 238 (5th Cir. 1963). We find no abuse of discretion in the instant case.

In the few instances in which the grand jury testimony failed to refresh the memory of the witnesses, portions of it were received as evidence of past recollection recorded. This was not an improper use of such testimony. United States v. Riccardi, 174 F.2d 883 (3rd Cir. 1949); 3 WIGMORE ON EVIDENCE, §§ 754, 755 (3rd Ed. 1940).

Several other questions are raised as to the admissibility of evidence. We have considered them and find that they are frivolous and without merit.

The appellants assign as error the alleged failure of the trial judge to adequately instruct the jury as to the limited purpose and effect of the grand jury testimony. We note that the "relevant charge" is not reproduced in the appendix as required by our rule 24(2) (e), 28 U.S.C.A., and the brief contains no citation to the original record. This defect would warrant a dismissal of the assignment without consideration. Marcinak v. West Indies Investment Company, 299 F.2d 821 (3rd Cir. 1962); Gendron v. United States, 295 F.2d 897 (8th Cir. 1961). However, we prefer to dispose of the matter on other grounds.

If there was any deficiency or omission in the instructions given it was incumbent upon the appellants to note a timely objection "stating distinctly the matter to which [they objected] and the grounds of [their objection.]" FED.RULES CR.PROC. rule 30, 18 U.S.C.A. United States v. Provenzano, 334 F.2d 678, 690 (3rd Cir. 1964), cert. den. 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544. This was not done; in fact, there was but one objection to the court's instructions and this was clearly not germane to the question raised by the present assignment of error. Absent timely objection or a request for specific instructions, the alleged deficiency in the court's charge may not be assigned as error. Rule 30, supra; Richards v. United States, 329 F.2d 188 (5th Cir. 1964), cert. den. 379 U.S. 854, 85 S.Ct. 102, 13 L.Ed.2d 57; Berry v. United States, 271 F.2d 775 (5th Cir. 1959), cert. den. 362 U.S. 903, 80 S.Ct. 612, 4 L.Ed.2d 555; United States v. Bookie, 229 F.2d 130, 135 (7th Cir. 1956).

## MOTION FOR SEVERANCE AND FOR SEPARATE TRIALS

The appellants complain of the denial of their respective pretrial motions for severance and separate trials made under Fed.Rules Crim.Proc., rule 14, 18 U.S.C.A. We find no merit in this complaint. It is well settled that such motions are addressed to the sound discretion of the trial judge and his decision thereon will not be reversed in the absence of an affirmative showing of an abuse of discretion. United States v. Gardner, 347 F.2d 405, 406 (7th Cir. 1965); United States v. Miller, supra; Milam v. United States, 322 F.2d 104, 110 (5th Cir. 1963), cert. den. Kimball v. United States, 377 U.S. 911, 84 S.Ct. 1174, 12 L.Ed.2d 181; Fisher v. United States, 324 F.2d 775, 780–781 (8th Cir. 1963), cert. den. 377 U.S. 999, 84 S.Ct. 1935, 12 L.Ed.2d 1049. We find no abuse of discretion in the case before us.

Lastly, the appellants maintain that the denial of their respective motions for a new trial was reversible error. It is argued that the joint trial was prejudicial. We are convinced from our examination of the record that the trial was fairly conducted. Indeed, this is conceded in the appellants' brief.

The charge of prejudice appears to rest on the supposition that the jury was confused. Apposite is the statement in Opper v. United States, 348 U.S. 84,

95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954):

"It was within the sound discretion of the trial judge as to whether the defendants should be tried together or severally and there is nothing in the record to indicate an abuse of such discretion when petitioner's motion for severance was overruled. * * * To say that the jury might have been confused amounts to nothing more than an unfounded speculation that the jurors disregarded clear instructions of the court in arriving at their verdict. Our theory of trial relies upon the ability of a jury to follow instructions. There is nothing in this record to call for reversal because of any confusion or injustice arising from the joint trial."

The judgments of the court below as to all the appellants, except Bonanno, will be affirmed. The judgment as to Bonanno will be reversed and his case will be remanded with an instruction to enter a judgment of acquittal.