**UNITED STATES of America,**
**Appellee,**

v.

**Ernest Lattie HONEYCUTT, Appellant.**

**No. 8704.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 8, 1962.

Decided Dec. 27, 1962.

Harold K. Bennett, Asheville, N. C. (J. Harry Sample, Asheville, N. C., on brief), for appellant.

William Medford, U. S. Atty., and James O. Israel, Jr., Asst. U. S. Atty. (Robert J. Robinson, Asst. U. S. Atty., on brief), for appellee.

Before SOBELOFF, Chief Judge, BRYAN, Circuit Judge, and BUTZNER, District Judge.

ALBERT V. BRYAN, Circuit Judge.

Inadequacy of the proof to warrant the verdict of guilty against him is the sole ground upon which Ernest Lattie Honeycutt now appeals his conviction of violating 18 U.S.C. §§ 1952 and 1953 [1]—interstate travel in aid of racketeering and interstate transportation of wagering paraphernalia. The trial court, we think, should have granted the motion for a judgment of acquittal. We do so now.

Honeycutt was indicted with Sam Roy Bryant on four counts: No. 1, conspiring to violate §§ 1952 and 1953 supra; No. 2, carrying and sending, interstate, baseball ticket "pull boards" to be used in bookmaking and wagering pools; No. 3, using a facility, that is, a trailer, interstate, to promote and carry on, and thereafter promoting and carrying on, an unlawful activity involving the use of "tip boards" and "pull boards" in gambling offenses against the laws of the state of North Carolina; and No. 4, travelling interstate with intent to promote and carry on, and thereafter promoting and carrying on, an unlawful activity involving the use of "tip boards" and "pull boards" in gambling offenses in contravention of the laws of North Carolina. The interstate termini were Bristol, Tennessee and Asheville, North Carolina. Bryant pleaded guilty to counts 2 and 3. Both he and Honeycutt were acquitted on count 1, the conspiracy. Bryant was found guilty on count 4, and Honeycutt on counts 2, 3 and 4.

The measurement of the sufficiency of evidence in a criminal case was stated by this court in Bell v. United States, 185 F.2d 302, 310, cert. den. 340 U.S. 930, 71 S.Ct. 492, 95 L.Ed. 671 (1951), by quoting from Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, 232, cert. den. 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947), as follows:

> "The true rule, therefore, is that a trial judge, in passing upon a motion for a directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt."

A chronicle of the proof here reveals it as wanting in the weight required by this test. It was, at least, as consistent with the accused's innocence as with his guilt; "a reasonable mind" could not "fairly conclude guilt beyond a reasonable doubt." This is true of all the counts.

Honeycutt's prosecution was premised on participation in January 1962 as an aider or abettor in a crime dependent upon interstate conduct. 18 U.S.C. § 2. It is conceded that tip boards and pull boards are instruments for gambling, an activity denounced by the laws of North Carolina. Neither Bryant nor Honeycutt took the stand or offered evidence. Bryant operated Sam's Grocery in Asheville in a building with a store in front and a gambling room behind. The property

---

1. Acts of September 13, 1961, Pub.L. 87-228, 75 Stat. 498, 18 U.S.C. § 1952; Pub.L. 87-218, 75 Stat. 492, 18 U.S.C. § 1953.

belonged to Honeycutt's sister. Elsewhere in the city Bryant rented an outbuilding for the storage of his gambling materials. A Federal gambling stamp had been obtained by him in June 1961, and he had filed monthly reports of his operations. In his application for the gambling stamp Bryant stated he was engaged in accepting wagers on his own account with no employees. But Honeycutt in a similar—and successful—application in August, 1961 declared he was receiving wagers as Bryant's employee. Witnesses for the Government testified that Bryant had said he owned the store and lottery business with no one else having an interest in it.

Honeycutt, they also stated, was an employee of Bryant drawing $50.00 per week to sell lottery tickets. According to the testimony, he had been seen selling tip boards in the rear section of the building from time to time. He had on occasion paid off the employees in the store and once had paid the printer upon delivery of certain basketball cards. All of these incidents were said to have occurred between May 1961 and January 15, 1962.

On January 8, 1962 Bryant in person purchased from the Tri-State Corporation printing plant in Bristol, Tennessee tip boards and baseball pull boards for $4,012.00 in cash. Thereupon they were packed in 87 large cartons marked by Bryant as "chair covers", and loaded into a truck that Bryant had borrowed in Asheville and driven to Bristol.

On January 9, 1962 these cartons were taken by Bryant in the same truck to the E. T. & W. N. C. Transportation Company, in Bristol, for transportation to Asheville. The bill of lading showed the merchandise was shipped by Bryant consigned to himself at Asheville. In the course of loading them on the trailer of the Transportation Company, one of the cartons was accidentally broken open, revealing its true contents. The Federal Bureau of Investigation was immediately alerted.

On January 11, 1962 the shipment arrived at the Asheville terminal of the Transportation Company in one of its trailers. Bryant—with the assistance of an undercover FBI agent—then loaded the cartons on the same truck he had used in Tennessee. Driving from the terminal he was at once followed by FBI agents, who arrested him as he drove into the entrance to his storage outbuilding.

Honeycutt, who occasionally acted as an informer for the FBI, on two occasions previous to January 8 had inquired of FBI agents if they knew of any method by which tip boards and pull boards could be brought into North Carolina without violating the new Federal laws. While Bryant was in Bristol, on January 8, Honeycutt called Agent Moore from Sam's Grocery for an appointment to meet him. When they met, after some preliminary discussion, Honeycutt stated that "we" had been talking with an attorney and "we" think we have found a loophole in the new law, making it possible to bring gambling materials into the State from Bristol, Tennessee without violating the Federal law. Somewhat similar statements were repeated by Honeycutt to the Agents on January 12 and January 15, 1962. After his arrest he denied any knowledge of Bryant's trip to Tennessee. Honeycutt declined to answer when the Agents asked whether he had any interest in the land or the building in which the gambling operation was conducted, or whether he received a percentage of the profits from the operations.

▬▬▬ This is all the evidence the Government marshalled against Honeycutt. To convict him as an aider or abettor the prosecution had to show conduct on his part amounting to counselling or other assistance in Bryant's interstate criminal activity. 18 U.S.C. § 2; Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949). To this end it pitched its case on a proprietorship or partnership of Honeycutt in the enterprise carried on in the back

room of Sam's Grocery. The evidence on this score upon a fair assay is not of requisite weight. In our opinion a reasonable juror could not be without a reasonable doubt of Honeycutt's aid or abetment of the interstate crime. The judgment in the District Court must be reversed and an acquittal entered here.

Reversed and final judgment.