**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3554
_____

UNITED STATES OF AMERICA

v.

ANTOINE ALICEA, a/k/a Twan a/k/a Twiz a/k/aTwizzy

Antoine Alicea,
                                          Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-07-cr-00737-015
District Judge: The Honorable Eduardo C. Robreno

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 13, 2012

Before: SMITH and CHAGARES, *Circuit Judges*
ROSENTHAL, *District Judge**

(Filed: September 17, 2012)

_____

* The Honorable Lee H. Rosenthal, District Judge for the United States District Court for the Southern District of Texas, sitting by designation.

OPINION
_____

SMITH, *Circuit Judge.*

A jury convicted Antoine Alicea of conspiracy to distribute cocaine, and the District Court sentenced him to 292 months imprisonment. Alicea appeals his conviction and sentence. We will affirm.

I.

On August 6, 2008, Alicea was indicted and charged with, *inter alia*, conspiracy to distribute 5 kilograms or more of cocaine and 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A) ("Count 1").[1] The government alleged that Kareem Smith was the head of a conspiracy to distribute cocaine and crack cocaine in parts of Philadelphia and Cecil County, Maryland from November 2002 through September 2007 (referred to in the Indictment as the Smith Crack Cocaine Gang or "SCCG"). It further alleged that Alicea was a co-conspirator whose role was to supply cocaine to the SCCG.

On June 2, 2009, following a jury trial, Alicea was convicted on Count 1. On June 9, 2009, Alicea filed a motion for judgment of acquittal pursuant to

---

[1] Alicea was also charged with: possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 2); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3). Because the jury found him not guilty of these charges, they are not at issue on appeal.

Federal Rule of Criminal Procedure 29(c). On March 10, 2010, the District Court denied Alicea's motion.

On June 28, 2010, the District Court held a hearing as to the quantity of drugs that should be attributed to Alicea and his co-defendants at sentencing. On July 16, 2010, the District Court issued an order as to the drug weight attribution and established the applicable sentencing guidelines for Alicea and his co-defendants.

On August 19, 2010, the District Court imposed a sentence on Alicea of 292 months imprisonment to be followed by a 5-year period of supervised release, along with a $1,000 fine and a $100 special assessment.

Alicea appealed his conviction and sentence.[2]

_____

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

II.

A.

Alicea argues that, although he was a drug dealer and may have sold cocaine to members of the SCCG on a periodic basis, those sales were made as part of a standard buyer-seller relationship, and thus, the evidence was insufficient to prove that he joined the SCCG.

We review a challenge to the denial of a motion for judgment of acquittal de novo, viewing the evidence in the light most favorable to the government. *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006). We must sustain the verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). It is immaterial that the evidence also permits a "less sinister conclusion" because "the evidence need not be inconsistent with every conclusion save that of guilt." *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005) (citation and quotation marks omitted). In sum, the verdict must stand unless the insufficiency of the evidence is clear. *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002) (citation and quotation marks omitted).

The elements of a conspiracy charge under § 846 are: (1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal. *See United States v. Iglesias*, 535

4

F.3d 150, 156 (3d Cir. 2008).

In *United States v. Gibbs*, 190 F.3d 188, 194 (3d Cir. 1999), we addressed the issue of the scope of conspiracy liability for a defendant whose sole involvement with the conspiracy consisted of buying drugs from another member of the conspiracy and reselling those drugs to others. "It is well-settled that a simple buyer-seller relationship, without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy." *Id.* at 197. However, even an occasional supplier or buyer for redistribution could be shown to be a member of the conspiracy by evidence, direct or inferential, of knowledge that he was part of a larger operation. *See id.* at 198. Where the only evidence linking the seller or buyer to the conspiracy is the transactions themselves, courts look to the surrounding circumstances to determine whether the defendant was a mere seller or buyer that cannot be held to be a conspirator or whether he has "knowledge of the conspiracy to the extent that his drug [sales] or purchases are circumstantial evidence of his intent to join that conspiracy." *Id.* When making this determination, courts generally consider the following factors: how long the defendant was affiliated with the conspiracy; whether there was an established method of payment; the extent to which transactions were standardized; whether the actions of the defendant and members of the conspiracy demonstrated a level of

5

mutual trust; whether the transactions involved a large amount of drugs; and whether the buyer purchased the drugs on credit. *Id.* at 199.

A reasonable jury could conclude that the evidence, viewed in the light most favorable to the government, sufficiently demonstrates Alicea's participation in the SCCG. This evidence includes that: Smith and other members of the SCCG regularly contacted Alicea during a five-year period, during which time Alicea supplied large amounts of cocaine to the group (Supp. App. 535-38, 540, 558); members of the SCCG informed Alicea of their operational plans, including that that they could sell crack in Maryland for four times the price it was in Philadelphia (Supp. App. 574-75, 592-93); Alicea supplied Smith with cocaine on credit (Supp. App. 544-45); and Smith gave Alicea a firearm as partial payment for a drug transaction (Supp. App. 290-91, 341, 763-64). Further, Smith testified that there was no one-for-one accounting of cash for cocaine in any single transaction, but rather a loose, continuous flow of cocaine and money, which demonstrates a high level of trust between Alicea and the members of the SCCG. *See* Supp. App.

544-45, 555.[3]  Based on this evidence, a reasonable jury could infer that Alicea was a member of the SCCG.

Accordingly, the District Court did not err in denying Alicea's Rule 29 motion for judgment of acquittal.

B.

We review the District Court's determination as to the amount of drugs attributed to a defendant for clear error.  *United States v. Yeung*, 241 F.3d 321, 322 (3d Cir. 2001).

When sentencing co-conspirators, the sentencing court may consider "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."  U.S.S.G. § 1B1.3(a)(1)(B) (2009) (Alicea was sentenced under the 2009 version of the Guidelines Manual).  As to offenses involving controlled substances, a "defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook."  *See*

---

[3] Alicea argues that he, like the defendant in *United States v. Pressler*, 256 F.3d 144 (3d Cir. 2001), never agreed to work with either his seller or his buyers to achieve a common goal or advance a common interest.  However, *Pressler* is inapposite for primarily two reasons.  First, the issue in *Pressler* was whether a conspiracy existed at all, not whether a particular individual was a member of a documented conspiracy.  *See Id.* at 147, 151 (distinguishing *Gibbs* because the issue in *Pressler* was whether a conspiracy existed).  Second, the evidence demonstrates that Alicea, unlike the defendant in *Pressler*, was so

*id.* cmt. n.2. We have held that, under § 1B1.3, a defendant can be responsible for the amount of drugs distributed by his co-conspirators only if the drugs distributed: (1) were in furtherance of the conspiracy; (2) were within the scope of the defendant's agreement; and (3) were reasonably foreseeable in connection with the criminal activity that the defendant agreed to undertake. *See United States v. Price*, 13 F.3d 711, 732 (3d Cir. 1994). When determining the amount of drugs attributable to a particular defendant, the sentencing court must conduct a "searching and individualized inquiry," *United States v. Collado*, 975 F.2d 985, 995 (3d Cir. 1992), and may rely upon trial testimony of co-conspirators, *Price*, 13 F.3d at 732.

Here, the District Court — after a careful and thorough consideration of the issue, which included a hearing addressing the issues of, *inter alia*, length of participation in the conspiracy and drug weight attribution as to each defendant — did not plainly err in determining that Alicea was responsible for conspiring to distribute 59.1 kilograms of crack cocaine. First, the District Court determined that Alicea was a member of the SCCG from its beginning (November 2002) to its end (September 2007), and thus, he was involved for 58 months, which conservatively equates to 232 weeks. Smith's trial testimony supported this determination. *See* Supp. App. 558 (testifying that Alicea supplied the SCCG with cocaine from 2002

---

closely connected with the conspiracy that a reasonable jury could infer he shared a unity

to 2007). Second, the District Court determined that the SCCG distributed approximately 9 ounces of crack per week, which is equal to approximately 255 grams. This conservative determination was supported by the trial testimony, in particular Smith's testimony that he was obtaining approximately 9 ounces of cocaine multiple times a week from his suppliers at the beginning of the conspiracy (Supp. App. 540) and that this amount increased to between 9 to 13.5 ounces later in the conspiracy (Supp. App. 550-51). Moreover, the trial testimony also indicates that Alicea knew, or that it was reasonably foreseeable, that others were supplying cocaine to the SCCG.[4] Thus, the District Court did not plainly err in concluding that Alicea was responsible for 0.255 kilograms of crack per week multiplied by 232 weeks, totaling 59.1 kilograms of crack.

Accordingly, we will affirm.

---

of purpose with — and joined — the SCCG with the intent to further its common goals.

[4] As discussed *supra*, the evidence at trial demonstrates that Alicea was closely involved with the SCCG's operations and understood the conspiracy's scope. Thus, Alicea knew — or reasonably should have known — that his supply of cocaine to the SCCG was insufficient to cover its operating needs and that the SCCG used an additional supplier. Also, the amount of cocaine provided by suppliers other than Alicea to the SCCG was within the scope of Alicea's agreement to join the conspiracy because that amount allowed the SCCG to continue operating and potentially expand its market share even when Alicea temporarily exhausted his supply.