**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-3855
_____

UNITED STATES OF AMERICA

v.

ROBERT WILLIAMS, a/k/a Bashir a/k/a Bash

Robert Williams,
                Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-07-cr-00737-014
District Judge: The Honorable Eduardo C. Robreno

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 13, 2012

Before: SMITH and CHAGARES, *Circuit Judges*
ROSENTHAL, *District Judge*[*]

_____

[*]The Honorable Lee H. Rosenthal, District Judge for the United States District Court for the Southern District of Texas, sitting by designation.

(Filed: September 17, 2012)

_____

OPINION

_____

SMITH, *Circuit Judge.*

A jury convicted Robert Williams of conspiracy to distribute cocaine and distributing cocaine, and the District Court sentenced him to 300 months imprisonment. Williams appeals his conviction and sentence. We will affirm.

I.

On August 6, 2008, Williams was indicted and charged with, *inter alia*, conspiracy to distribute 5 kilograms or more of cocaine and 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A) ("Count 1") and possession with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) ("Count 4"). The government alleged that Kareem Smith was the head of a conspiracy to distribute cocaine and crack cocaine in parts of Philadelphia and Cecil County, Maryland from November 2002 through September 2007 (referred to in the Indictment as the Smith Crack Cocaine Gang or "SCCG"). It further alleged that Williams was a co-conspirator whose role was to supply cocaine to the SCCG.

On June 2, 2009, following a jury trial, Williams was convicted on Counts 1

and 4. On September 14, 2009, Williams filed a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c). On March 10, 2010, the District Court denied Williams' motion.

On June 28, 2010, the District Court held a hearing as to the quantity of drugs that should be attributed to Williams and his co-defendants at sentencing. On July 16, 2010, the District Court issued an order as to the drug weight attribution and established the applicable sentencing guidelines for Williams and his co-defendants.

On September 13, 2010, the District Court imposed a sentence on Williams of 300 months imprisonment to be followed by an 5-year period of supervised release, along with a $2,000 fine and a $200 special assessment.

Williams appealed his conviction and sentence.[1]

## II.

### A.

Williams argues that, although he was a drug dealer and may have sold cocaine to members of the SCCG on a periodic basis, those sales were made as part of a standard buyer-seller relationship, and thus, the evidence was insufficient to prove that he joined the SCCG.

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

We review a challenge to the denial of a motion for judgment of acquittal de novo, viewing the evidence in the light most favorable to the government. *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006). We must sustain the verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). It is immaterial that the evidence also permits a "less sinister conclusion" because "the evidence need not be inconsistent with every conclusion save that of guilt." *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005) (citation and quotation marks omitted). In sum, the verdict must stand unless the insufficiency of the evidence is clear. *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002) (citation and quotation marks omitted).

The elements of a conspiracy charge under § 846 are: (1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal. *See United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008).

In *United States v. Gibbs*, 190 F.3d 188, 194 (3d Cir. 1999), we addressed the issue of the scope of conspiracy liability for a defendant whose sole involvement with the conspiracy consisted of buying drugs from another member of the conspiracy and reselling those drugs to others. "It is well-settled that a simple buyer-seller relationship, without any prior or contemporaneous

understanding beyond the sales agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy." *Id.* at 197. However, even an occasional supplier or buyer for redistribution could be shown to be a member of the conspiracy by evidence, direct or inferential, of knowledge that he was part of a larger operation. *See id.* at 198. Where the only evidence linking the seller or buyer to the conspiracy is the transactions themselves, courts look to the surrounding circumstances to determine whether the defendant was a mere seller or buyer that cannot be held to be a conspirator or whether he has "knowledge of the conspiracy to the extent that his drug [sales] or purchases are circumstantial evidence of his intent to join that conspiracy." *Id.* When making this determination, courts generally consider the following factors: how long the defendant was affiliated with the conspiracy; whether there was an established method of payment; the extent to which transactions were standardized; whether the actions of the defendant and members of the conspiracy demonstrated a level of mutual trust; whether the transactions involved a large amount of drugs; and whether the buyer purchased the drugs on credit. *Id.* at 199.

A reasonable jury could conclude that the evidence, viewed in the light most favorable to the government, sufficiently demonstrates Williams' participation in the SCCG. This evidence includes that: Smith and other members of the SCCG regularly contacted Williams during a five-year period, during which time

Williams supplied large amounts of cocaine to the group (Supp. App. 224-26, 535-38, 540, 558-59); members of the SCCG informed Williams of their operational plans, including that that they could sell crack in Maryland for four times the price it was in Philadelphia (Supp. App. 574-75, 592-93); Smith sent Williams to sell cocaine on behalf of the SCCG to one of Smith's acquaintances, who — unbeknownst to Smith or Williams — was a confidential informant (Supp. App. 385-402, 652-60); case agent John Bowman testified regarding phone records showing extensive phone communications between Williams and Smith (Supp. App. 898-936); and on at least one occasion, Williams supplied Smith with cocaine as a gift to get Smith back on his feet after his release from jail (Supp. App. 605-07).[2] Based on this evidence, a reasonable jury could infer that Williams was a member of the SCCG.

Accordingly, the District Court did not err in denying Williams' Rule 29 motion for judgment of acquittal.

---

[2] Williams argues that he, like the defendant in *United States v. Pressler*, 256 F.3d 144 (3d Cir. 2001), never agreed to work with either his seller or his buyers to achieve a common goal or advance a common interest. However, *Pressler* is inapposite for primarily two reasons. First, the issue in *Pressler* was whether a conspiracy existed at all, not whether a particular individual was a member of a documented conspiracy. *See Id.* at 147, 151 (distinguishing *Gibbs* because the issue in *Pressler* was whether a conspiracy existed). Second, the evidence demonstrates that Williams, unlike the defendant in *Pressler*, was so closely connected with the conspiracy that a reasonable jury could infer he shared a unity of purpose with — and joined — the SCCG with the intent to further its common goals.

We review the District Court's determination as to the amount of drugs attributed to a defendant for clear error. *United States v. Yeung*, 241 F.3d 321, 322 (3d Cir. 2001).

When sentencing co-conspirators, the sentencing court may consider "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B) (2008) (Williams was sentenced under the 2008 version of the Sentencing Guidelines Manual). As to offenses involving controlled substances, a "defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *See id.* cmt. n.2. We have held that, under § 1B1.3, a defendant can be responsible for the amount of drugs distributed by his co-conspirators only if the drugs distributed: (1) were in furtherance of the conspiracy; (2) were within the scope of the defendant's agreement; and (3) were reasonably foreseeable in connection with the criminal activity that the defendant agreed to undertake. *See United States v. Price*, 13 F.3d 711, 732 (3d Cir. 1994). When determining the amount of drugs attributable to a particular defendant, the sentencing court must conduct a "searching and individualized inquiry," *United States v. Collado*, 975

F.2d 985, 995 (3d Cir. 1992), and may rely upon trial testimony of co-conspirators, *Price*, 13 F.3d at 732.

Here, the District Court — after a careful and thorough consideration of the issue, which included a hearing addressing the issues of, *inter alia*, the length of participation in the conspiracy and the drug weight attribution as to each defendant — did not plainly err in determining that Williams was responsible for conspiring to distribute 59.1 kilograms of crack cocaine. First, the District Court determined that Williams was a member of the SCCG from its beginning (November 2002) to its end (September 2007), and thus, he was involved for 58 months, which conservatively equates to 232 weeks. Smith's trial testimony supported this determination. *See* Supp. App. 558-59 (testifying that Williams supplied the SCCG with cocaine from 2002 to 2007). Second, the District Court determined that the SCCG distributed approximately 9 ounces of crack per week, which is equal to approximately 255 grams. This conservative determination was supported by the trial testimony, in particular Smith's testimony that he was obtaining approximately 9 ounces of cocaine multiple times a week from his suppliers at the beginning of the conspiracy (Supp. App. 540) and that this amount increased to between 9 to 13.5 ounces later in the conspiracy (Supp. App. 550-51). Moreover, the trial testimony also indicates that Williams knew, or that it was reasonably

foreseeable, that others were supplying cocaine to the SCCG.[3]  Thus, the District

Court did not plainly err in concluding that Williams was responsible for 0.255

kilograms of crack per week multiplied by 232 weeks, totaling 59.1 kilograms of

crack.

Accordingly, we will affirm.

---

[3] As discussed *supra*, the evidence at trial demonstrates that Williams was closely involved with the SCCG's operations and understood the conspiracy's scope.  Thus, Williams knew — or reasonably should have known — that his supply of cocaine to the SCCG was insufficient to cover its operating needs and that the SCCG used an additional supplier.  Also, the amount of cocaine provided by suppliers other than Williams to the SCCG was within the scope of Williams' agreement to join the conspiracy because that amount allowed the SCCG to continue operating and potentially expand its market share even when Williams temporarily exhausted his supply.

Moreover, we are not persuaded by Williams' argument that the amount of crack cocaine for which he is responsible should be reduced on account of his incarceration from July through November 2004 because that amount does not affect his sentencing guideline range.  The District Court determined that Williams was responsible for conspiring to distribute 59.1 kilograms of crack, which resulted in the highest base offense level of 38 under U.S.S.G. § 2D1.1(c)(1) (2008) (his total offense level was 40 because it included a two point enhancement under § 2D1.1(b)(1) for a dangerous weapon).  Williams was incarcerated for 16 weeks, during which the District Court estimated that the SCCG distributed 4.08 kilograms of crack (i.e., 0.255 kilograms of crack per week multiplied by 16 weeks).  If we were to reduce the total amount found by the District Court (59.1 kilograms) by the 4.08 kilograms that the SCCG distributed while Williams was in jail, Williams would be responsible for approximately 55 kilograms of crack.  This amount is still well above the 4.5 kilogram threshold that corresponds with the base offense level of 38 as set forth in § 2D1.1(c)(1) of the applicable 2008 version of the Guidelines Manual.  Consequently, even if Williams were not responsible for the crack the SCCG sold during his period of incarceration, his offense level, and thus his sentencing guidelines range, would remain unaffected.