--NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1600
_____

UNITED STATES OF AMERICA

v.

ANTHONY ROBINSON,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:21-cr-00175-002)
District Judge:  Honorable Gene E. K. Pratter


_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 6, 2023
_____

Before:  CHAGARES, Chief Judge, SCIRICA and RENDELL, Circuit Judges.

(Filed: February 21, 2023)
_____

OPINION*
_____


CHAGARES, Chief Judge.

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

A jury found Anthony Robinson ("Robinson") guilty of conspiracy to possess contraband in prison in violation of 18 U.S.C. § 371. Following the jury's guilty verdict, Robinson moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The District Court denied the motion. Robinson appealed, arguing that there was insufficient evidence to support his conviction. Robinson's arguments are meritless, and we will affirm the judgment of the District Court.

I.

We write primarily for the parties and recite only the facts essential to our decision. Robert Patterson ("Patterson"), Joel Sambrano ("Sambrano"), Robinson, and Kaleaf Gilbert ("Gilbert") were indicted on one count of conspiracy to possess contraband in prison in violation of 18 U.S.C. § 371 and two counts of possession of contraband in prison in violation of 18 U.S.C. § 1791(a)(2). Patterson and Sambrano pleaded guilty, and they testified against Gilbert and Robinson.

Patterson and Sambrano testified that they worked with Robinson and Gilbert to bring contraband — mostly drugs — into the Federal Detention Center ("FDC") in Philadelphia, Pennsylvania. Patterson and Sambrano testified that they enlisted Robinson to help with this scheme because he had a contraband cell phone and knew people in Philadelphia who could provide the drugs.

Patterson and Sambrano testified that the scheme worked as follows: Patterson and Sambrano created a hole in their cell window using a knife, screw, and homemade candle. They also crafted a make-shift line out of utensil wrappers, with batteries and other weights attached to help it reach the street. Patterson and Sambrano would lower

the line to the street outside the FDC, someone would attach contraband to the line, and then Patterson and Sambrano would lift the line back into their cell. Robinson let Patterson and Sambrano know when to lower and lift the line. Robinson used his cell phone to communicate with the people outside the FDC providing the contraband. He then would communicate when to lower and lift the line to Gilbert, who occupied the cell next to Robinson, through a hole in Robinson's cell wall. Gilbert, in turn, would pass this information to Patterson and Sambrano through the ventilation shafts.

Patterson and Sambrano testified that they attempted to bring contraband into the FDC this way on three occasions. The first attempt was made on April 11, 2020, and was successful. Patterson testified that Robinson helped not only with retrieving the contraband during this attempt, but also with divvying it up to other prisoners within the FDC. Patterson and Sambrano made another attempt that same week which failed because the line got stuck on something outside the FDC. Patterson testified that after the unsuccessful attempt, Robinson visited his and Sambrano's cell and stated, "you guys are messing up. You had my people out there all night." Appendix ("App.") 295. The third and final attempt was made on April 15, 2020, and also was successful.

FDC staff discovered the scheme during the April 15 attempt. At around 2:45 a.m., staff noticed a man reach down and pick something up from the sidewalk outside the prison. Staff then saw the man a second time and heard a "ding" as something hit a glass window of the FDC. App. 71–72. When staff went outside to investigate, the man fled, and staff saw the line hanging out of Patterson's and Sambrano's cell window. Surveillance footage from just before 2:45 a.m. showed the man next to a Honda sport

3

utility vehicle ("SUV") that had a full-size spare tire mounted on the rear door and a matte finish on the hood.

Staff then went to Patterson's and Sambrano's cell, where they discovered a hole in the window and the line that Patterson and Sambrano used to recover the contraband. The line had attached to it strips of Suboxone (a drug used to treat opioid dependence), cocaine, tobacco, methamphetamine tablets, and marijuana. Staff also found a L8Star mobile phone without a SIM card.

Officers searched Robinson's cell about a week later and found a L8Star mobile phone with a SIM card. Phone records show that Robinson's cell phone was in contact with his niece's, Amya Robinson ("Amya"), cell phone and another phone number on April 15 during the relevant time period and that Amya's cell phone was in the vicinity of the FDC on April 15 during the same period. Amya drives a black Honda CRV — an SUV — with a full-sized spare tire on the back of the car and a replacement hood. During the trial, she saw the surveillance footage showing the man that staff saw on April 15 next to a Honda SUV and testified that "it could possibly be" her car. App. 161.

The jury acquitted Gilbert but convicted Robinson of conspiracy to possess contraband in prison. Robinson then moved under Rule 29 for a judgment of acquittal. The court denied the motion, and Robinson timely appealed.

## II.[1]

On appeal from the denial of a motion for judgment of acquittal, we exercise

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

plenary review and will sustain the verdict if, viewing the evidence in the light most favorable to the Government, "any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." United States v. Smith, 294 F.3d 473, 476 (3d Cir. 2002). "Only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1989). We "must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury." United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005).

The elements of conspiracy to violate federal law in violation of 18 U.S.C. § 371 are (1) that two or more persons agreed to commit an offense against the United States, here, possessing contraband in prison in violation of 18 U.S.C. § 1791(a)(2); (2) that the defendant was a party to or member of that agreement; (3) that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve a common goal or objective to commit an offense against the United States; and (4) during the existence of the agreement or conspiracy, at least one member of the conspiracy performed an overt act in furtherance of the conspiracy. See United States v. Applewhaite, 195 F.3d 679, 684 (3d Cir. 1999); 3d Cir. Crim. Model Jury Instr. § 6.18.371A.

Robinson challenges only the third element, arguing that the evidence was insufficient for the jury to find "unity of purpose or an intent to achieve a common goal" between Robinson, Patterson, and Sambrano because (1) Robinson did not "seek nor

5

retrieve any of the smuggled contraband," Robinson Br. 5; (2) the jury acquitted Gilbert and therefore rejected the Government's theory that Robinson communicated to Patterson and Sambrano through Gilbert; and (3) the evidence regarding Amya, including phone records showing that Robinson and Amya were in contact during the relevant time period on April 15 and that a car matching the make and model of Amya's car was in the vicinity of the FDC during the same period on April 15, does not establish Robinson's guilt beyond a reasonable doubt. We disagree.

First, that Robinson did not have any of the drugs in his cell does not negate that Robinson shared a unity of purpose with Patterson and Sambrano. The jury heard testimony from Patterson and Sambrano detailing Robinson's involvement in the conspiracy, including that Robinson used his cell phone to communicate with the people outside of the FDC who supplied the contraband and that Robinson directed Patterson and Sambrano to distribute the contraband to certain other prisoners. Indeed, Robinson's remark to Patterson and Sambrano that "you guys are messing up" after the unsuccessful attempt, App. 295, shows that the three were working together to achieve their common goal of bringing drugs into the prison.

Nor does the jury's acquittal of Gilbert mean that the evidence is necessarily insufficient to support Robinson's conviction. An apparent inconsistency in a jury's verdict "does not show that [the jurors] were not convinced of the defendant's guilt." United States v. Powell, 469 U.S. 57, 63 (1984). Regardless, Gilbert's acquittal and Robinson's conviction are not necessarily inconsistent. The defense suggested at trial that Patterson and Sambrano could have communicated through the vents with Gilbert's

6

roommate or prisoners in adjoining cells. The jury could well have accepted that argument as to Gilbert but concluded that Robinson was nevertheless involved in the conspiracy because of the other evidence presented at trial, including the evidence that showed Robinson was on the phone with Amya and that Amya was in the vicinity of the prison during the commission of the crime. See Smith, 294 F.3d at 476 (requiring us to view the evidence in the light most favorable to the Government in reviewing a convicted defendant's insufficiency arguments).[2]

Finally, we reject Robinson's assertion that there was insufficient evidence to support his conviction because the evidence related to Amya was insufficient standing alone to support Robinson's guilt. Evidence of a conspiracy may be proven by circumstantial evidence. Brodie, 403 F.3d at 134. The jury here heard evidence that Amya, Robinson's niece, was outside the FDC and on the phone with Robinson at the same time that a man was attaching contraband to the line. They also saw surveillance footage showing that man next to a car with the same make and model (and mismatched hood) as Amya's. A reasonable jury looking at this evidence could have logically determined that the only plausible explanation for these facts was that Amya, working alongside the man, was assisting Robinson in bringing drugs into the FDC. But even assuming that the evidence related to Amya alone could not prove Robinson's guilt beyond a reasonable doubt, both Patterson and Sambrano testified as to Robinson's

---

[2] Robinson relatedly argues that the Government failed to prove that there was a hole in the wall between Robinson's and Gilbert's cells at the time of the crime because one officer testified that he did not remember seeing a hole in Robinson's cell. Patterson, however, testified that Robinson showed him the hole.

7

involvement.  That testimony is enough to sustain the jury's guilty verdict.  See United States v. Monteiro, 871 F.3d 99, 109 (1st Cir. 2017) ("Testimony from one witness, alone, can be enough to sustain a finding of guilt.").

There were sufficient facts presented to the jury that could lead a rational trier of fact to find beyond a reasonable doubt that there was unity of purpose or an intent to achieve a common goal between Robinson and Patterson and Sambrano.  We accordingly decline to disturb the jury's verdict finding that Robinson conspired to possess contraband in prison.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.