**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2856
_____

UNITED STATES OF AMERICA

v.

MICHAEL CHEFF,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(Civil Action No. 2-20-cr-00209-01)
U.S. District Judge: Honorable Katharine S. Hayden
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on June 9, 2023

Before: HARDIMAN, AMBRO, and FUENTES, *Circuit Judges.*

(Filed: October 13, 2023)
_____

OPINION[*]
_____

[*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*.

Defendant-Appellant Michael Cheff was convicted of participating in a conspiracy to deprive individuals of their constitutional rights. He now appeals the jury's guilty verdict. We will affirm.

I.

Between 2016 and 2018, a group of five Paterson, New Jersey police officers, nicknamed the Robbery Squad, violated the constitutional rights of numerous civilians, detaining them without reasonable suspicion, stealing money from them, and subjecting them to unjustified and excessive force. Each was charged with, and pleaded guilty to, federal felony offenses for this conduct. Cheff was not one of the members of the Robbery Squad. Instead, he was the members' sergeant and supervisor. At trial, the jury heard testimony about Cheff's involvement in the overall conspiracy, including that Cheff used his position as sergeant to protect the Robbery Squad from scrutiny and allow them to continue to steal. Members of the Robbery Squad testified that they considered Cheff "part of the team" and that "he was going to take care of us, look out after us, we won't get in trouble as long as he's our supervisor."[1]

Cheff taught the Robbery Squad how to falsify reports to give the appearance of legitimate police work, and he provided the necessary signoffs on that fraudulent paperwork. When approving reports of drug arrests, Cheff did not question whether money was recovered. Members of the Robbery Squad specifically went to Cheff to get

---

[1] A901, 998.

reports signed off instead of their other supervisor, who they described as "too by the book."[2]  Additionally, Cheff periodically gave the officers a "heads up" that someone had complained about them, or that Internal Affairs might be investigating them, indicating that they should take a break from their illegal activities.[3]  The officers would consult Cheff after receiving an Internal Affairs complaint, and Cheff would make sure that their responses all matched.  Cheff regularly accepted cash from the Robbery Squad given to him with the coded phrases "lunch money" or "enjoy your dinner."[4]  In November of 2017, Cheff himself stole over two thousand dollars during a search.  He was present when three members of the Robbery Squad lied to gain access to a person's home.  Inside, Cheff found over two thousand dollars in a safe and pocketed most of it, telling an officer to tag a small portion.  Cheff was arrested and charged with one count of conspiring to deprive persons of their constitutional rights and one count of falsifying a record.  After a trial, a jury convicted him of both counts, and he was sentenced to 33 months imprisonment.  Cheff appeals, arguing that the Government failed to provide sufficient evidence that he was a member of the conspiracy.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

[2] A1012.
[3] A730.
[4] A753, 1001.

## III.

Cheff contends that the Government did not establish that he shared a unity of purpose with the Robbery Squad or that he intended to accomplish the conspiracy's illegal objects. Cheff asserts that, at worst, he committed illegal acts for his own benefit and failed to adequately supervise the Robbery Squad.

The standard of review in a sufficiency-of-the-evidence challenge is "highly deferential."[5] "We review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[ ] beyond a reasonable doubt."[6] When facts support conflicting inferences, we presume that the factfinder resolved them in favor of the prosecution and defer to that resolution.[7]

Cheff's appeal only challenges his conviction under 18 U.S.C. § 241, which makes it a crime for "two or more persons [to] conspire to injure, oppress, threaten or intimidate any person . . . in the free exercise" of his constitutional rights.[8] To prove a conspiracy, the Government must establish: "(1) a shared unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work

---

[5] *United States v. Bailey*, 840 F.3d 99, 109 (3d Cir. 2016).

[6] *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (internal quotation marks omitted)).

[7] *Bailey*, 840 F.3d at 109.

[8] 18 U.S.C. § 241.

together toward that goal."[9]  The Government may prove a conspiracy "entirely by circumstantial evidence."[10]

The evidence in this case was sufficient for a rational trier of fact to find beyond a reasonable doubt that Cheff was a member of the conspiracy.  Cheff was the supervisor of the Robbery Squad while its members were committing illegal acts.  There was a demonstrated level of mutual trust between Cheff and the members, who considered him to be "part of the team" and understood that he would look out for them.[11]  Members of the Robbery Squad specifically went to Cheff to get reports signed off instead of their other supervisor.  And Cheff accepted cuts of stolen money from patrol officers and maintained an established method of payment with the Robbery Squad.

Further, Cheff assisted the Robbery Squad in evading the suspicion of Internal Affairs by alerting members when Internal Affairs became suspicious.  Cheff contends that he simply had a laissez-faire attitude toward the actions of the Robbery Squad, but that there was no agreement to work toward a common goal.  However, evidence of a concerted cover-up suggests that crimes "were undertaken as part of an agreement, as opposed to having been random, uncoordinated acts."[12]

Cheff also participated in the illegal acts himself in November 2017.  He argues that conflicting testimony about the events of that day weaken the Government's

---

[9] *Bailey*, 840 F.3d at 108.
[10] *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002) (quoting *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999)).
[11] A1045.
[12] *Smith*, 294 F.3d at 479.

position.  But we presume that the jury resolved any conflict in favor of the prosecution and defer to that resolution.[13]

IV.

For the reasons stated above, we will affirm Cheff's conviction.

---

[13] *Bailey*, 840 F.3d at 109.